UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., § § Plaintiff, § VS. § § JESUS BARAJAS; aka BARAJAS; dba § CHUY & CHACHI BARBER & BEAUTY; § dba CHUY & CHACHI'S BARBER & § BEAUTY, § § Defendants. § | CIVIL ACTION NO. 7:16-CV-00464 |

## OPINION

The Court now considers J&J Sports Productions, Inc.'s ("Plaintiff") motion for summary judgment,[1] Jesus Barajas a/k/a Jesus Camargo Barajas d/b/a Chuy & Chachi Barber & Beauty d/b/a Chuy & Chachi's Barber & Beauty's ("Defendant") response,[2] and Plaintiff's reply.[3] After duly considering the record and relevant authorities, the Court **GRANTS** Plaintiff's motion for summary judgment as follows.

### I.   BACKGROUND

The operative facts of this case are undisputed. Plaintiff is the *exclusive* licensor to commercial establishments of a certain boxing match and undercard bouts which aired on September 14, 2013 (collectively the "Event").[4] Thus, the only lawful way for commercial

---

[1] Dkt. No. 31.
[2] Dkt. No. 32.
[3] Dkt. No. 33.
[4] *See* Dkt. No. 31-1 ¶ 4; *see also id*. p. 13. These exclusive rights were transferred to Plaintiff via contract by Golden Boy Promotions, LLC. The Event included the following bouts: Floyd Mayweather, Jr. v. Saul Alvarez; Danny Garcia v. Lucas Matthysse; Carlos Molina v. Ishe Smith; Pablo Cesar Cano v. Ashley Theopane; Ronald Gavril v. Dion Savage; Christopher Pearson v. Josh Williams; Luis Arias v. James Winchester; and Lanell Bellows v. Jordan Moore. *See id*. p. 6.

establishments to air the Event was by paying Plaintiff the appropriate licensing fee,[5] which was based upon the fire code capacity of the establishment.[6] The licensing fee for establishments with a fire code capacity of 0–100 people is $2,200.00.[7]

Defendant owns a barber and beauty shop.[8] On the night in question, he hosted a family gathering/barbeque,[9] airing the Event in its entirety[10] on the establishment's 55-inch Samsung television.[11] Plaintiff's auditor visited the establishment on the night in question, and it appeared to him that there were a large number of vehicles parked outside, and that a large gathering was taking place.[12] Although the exact number of attendees is unknown, the evidence indicates that at least seven of Defendant's family members attended,[13] and also that the fire code occupancy of the premises was less than one-hundred.[14] Regardless, Defendant did not pay Plaintiff a $2,200.00 licensing fee in exchange for the right to air the Event at his commercial establishment.[15] Rather, Defendant paid Dish $64.99 for a private/residential viewing,[16] and using a Dish satellite box located at his establishment, he diverted this viewing to his establishment's television.[17] Defendant presents evidence indicating that no fees of any kind were charged to his guests on the night in question.[18]

---

[5] *Id*. pp. 6–7.
[6] *Id*. p. 30.
[7] *Id*.
[8] *Id*. p. 64.
[9] *Id*. pp. 20 & 75.
[10] Dkt. No. 31-1 p. 61.
[11] *Id*. p. 71.
[12] *Id*. p. 20.
[13] *Id*. pp. 74–75.
[14] *Id*. p. 66.
[15] *Id*. pp. 59–61.
[16] Dkt. No. 31-1 p. 81.
[17] *Id*. p. 63.
[18] *Id*. p. 73.

Plaintiff filed the present suit under 47 U.S.C. §§ 553 or 605 in federal court,[19] but the case was delayed because Defendant never answered or appeared, resulting in default judgment against him.[20] After a writ of execution had issued, the Court granted Plaintiff's post-judgment motion for discovery because Defendant never responded to those requests.[21] Defendant thereafter appeared and requested relief from judgment, which the Court ultimately granted,[22] effectively restarting the entire case. The parties apprised the Court during a conference in September 2017 that they were negotiating a settlement, but such efforts evidently failed, because Plaintiff subsequently filed the instant motion for summary judgment.[23] Defendant's reply concedes that Defendant is liable, and only contests that his violation was not willful for purposes of calculating damages.[24] Plaintiff filed a reply, however, withdrawing its request for any damages based upon willfulness,[25] thus effectively mooting the core of Defendant's response. The Court now turns to its analysis.

## II. LEGAL STANDARD

Under Rule 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26] A fact is material "if its resolution could affect the outcome of the action,"[27] while a genuine dispute is present "only if a reasonable jury could return a verdict for the non-movant."[28] As a result, "[o]nly disputes

---

[19] Dkt. No. 1.
[20] Dkt. No. 15.
[21] *See* Dkt. No. 20.
[22] Dkt. No. 23.
[23] Dkt. No. 31.
[24] *See* Dkt. No. 32 pp. 6–7.
[25] Dkt. No. 33. p. 2.
[26] Fed. R. Civ. P. 56(a).
[27] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, Inc., 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[28] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[29]

The movant bears the initial burden of showing the absence of a genuine issue of material fact,[30] but is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of evidence.[31] The non-movant must then affirmatively demonstrate the existence of a genuine issue of material fact.[32] This demonstration must specifically indicate facts and their significance,[33] and cannot consist solely of "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation[.]"[34]

In conducting its analysis, the Court may consider evidence from the entire record, viewed in the light most favorable to the non-movant.[35] Rather than combing through the record on its own, however, the Court looks to the motion for summary judgment and response to present the evidence for consideration.[36] Parties may cite to any part of the record, or bring evidence in the motion and response.[37] By either method, parties need not proffer evidence in a form admissible at trial,[38] but must proffer evidence substantively admissible at trial.[39]

---

[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[30] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[31] *See id.* at 323–25; *see also Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995).
[32] *See Celotex Corp.*, 477 U.S. at 323.
[33] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[34] *U.S. ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 337 (5th Cir. 2008) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).
[35] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citations omitted).
[36] *See* Fed. R. Civ. P. 56(e).
[37] *See* Fed. R. Civ. P. 56(c).
[38] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").
[39] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("[T]he evidence proffered by the plaintiff to satisfy [her] burden of proof must be competent and admissible at trial.").

### III.     ANALYSIS

####     A.     *Liability*

The instant case is governed by § 605 because the Event was aired in Defendant's establishment via wireless transmission. Since the Federal Communications Act is a *strict liability statute*, "to prove a violation, the plaintiff need only show that the Event was shown in the defendant's establishment without the plaintiff's authorization."[40] Thus, it does not matter whether attendees were charged to attend the event in some form, or whether the defendant used a residential license to obtain the transmission in the commercial establishment.[41] The applicable statutory language makes no such distinctions for purposes of liability.[42] Although § 605 contains an exception for private viewing, it is not triggered if the transmission in question is encrypted.[43]

Here, it is undisputed that the Event was shown in Defendant's establishment without Plaintiff's authorization.[44] The mere fact that Defendant's guests were family members—and thus that the gathering was in some sense private—is irrelevant because the Event was still aired at a *commercial* establishment. The transmission in question was encrypted,[45] and thus the

---

[40] *Joe Hand Promotions, Inc. v. Lee*, 2012 WL 1909348, at *3 (S.D. Tex. May 24, 2012).
[41] *See Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, *9–10 (S.D.N.Y. Feb. 27, 2001) (finding that using residential license at commercial establishment still violates the Federal Communications Act).
[42] *See* 47 U.S.C.A. § 605(a) (West) ("[N]o person receiving . . . any interstate or foreign communication by wire or radio shall divulge or publish the . . . contents . . . of transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication *to any person*. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit *of another not entitled thereto*. No person having received any intercepted radio communication or having become acquainted with the contents . . . of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the . . . contents . . . of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit *or for the benefit of another not entitled thereto*.") (emphasis added). Importantly, this language does not distinguish between family/non-family, or paying/non-paying guests.
[43] 47 U.S.C.A. § 605(b)(1) (West).
[44] *See* Dkt. No. 31-1 pp. 59–61; *see also Am. Television & Communications Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1469 (M.D. Fla. 1986) (describing the contours of the private-viewing exception).
[45] Dkt. No. 31-1 ¶ 6.

private-viewing exception does not apply. Thus, Plaintiff is entitled to summary judgment with regard to liability on its § 605 claim.

B. *Damages*

Neither party has requested a jury trial,[46] and Plaintiff moves for summary judgment with regard to damages. The issue is fully briefed, so the Court proceeds to determine what damages Plaintiff is entitled to, beginning with statutory damages, and then turning to attorney's fees and costs.

*i. statutory damages*

Pursuant to § 605(e)(3)(C)(i), an aggrieved party may elect to recover either actual or statutory damages. Here, Plaintiff elects statutory damages, and specifically requests $10,000.00.[47] Plaintiff may recover an award of statutory damages "not less than $1,000 or more than $10,000, *as the court considers just*[.]"[48] For reasons already stated in its previous opinion granting default judgment against Defendant,[49] the Court finds that statutory damages in the amount of $3,200.00 (comprised of the commercial fee amount plus $1,000.00) is warranted.

Under § 605(e)(3)(C)(ii), the Court may, in its discretion, increase the award of statutory damages by no more than $100,000 if it finds that Defendant violated the statute "willfully and for purposes of direct or indirect commercial advantage or private financial gain[.]"[50] However, as previously noted, Plaintiff has withdrawn its request for any damages based upon willfulness.[51] Indeed, the nature of Defendant's gathering at his establishment suggests that his

---

[46] *See* Dkt. No. 1 (Plaintiff's complaint does not request a jury trial); *see also* Dkt. No. 24 (Defendant's answer does not request a jury trial).
[47] Dkt. No. 31 ¶ 14 & 21.
[48] 47 U.S.C. § 605(e)(3)(C)(i)(II) (emphasis added).
[49] *See* Dkt. No. 15 pp. 5–7.
[50] 47 U.S.C. § 605(e)(3)(C)(ii).
[51] Dkt. No. 33. p. 2.

actions were not made for commercial advantage. Thus, the Court awards only the statutory penalty.

### ii. attorney's fees & costs

Plaintiff also seeks costs and attorneys' fees. Under § 605, the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."[52] To determine the proper award of attorneys' fees, the Court will calculate the Lodestar fee: the result of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly billing rate.[53] The Court will then consider the Lodestar fee in light of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*[54] ("Johnson factors") and may, in its discretion, revise the Lodestar amount accordingly.[55]

Plaintiff's counsel attaches an affidavit to the instant motion indicating that he reasonably expended eight hours on the present case, and that his reasonable hourly rate is $250.00.[56] Thus, Plaintiff requests $2,000.00 in attorney's fees.[57] Defendant does not contest this figure or its predicates. In its previous opinion granting default judgment, the Court found that Plaintiff's counsel's reasonable hourly rate was $250.00 per hour, and that he reasonably expended four hours of work on the case to that point.[58] Thus, at that time, the Court awarded Plaintiff $1,000.00 in attorney's fees. Since that time, the case effectively restarted, and new dispositive motions had to be filed. For this reasons, doubling the award is reasonable.

---

[52] 47 U.S.C. § 605(e)(3)(B)(iii) (emphasis added).
[53] *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).
[54] 488 F.2d 714, 717–19 (5th Cir. 1974).
[55] *See Watkins*, 7 F.3d at 457.
[56] *See* Dkt. No. 31-1 p. 36.
[57] *Id.*
[58] *See* Dkt. No. 15 pp. 8–9.

Plaintiff has attached evidence supporting the reasonableness of a $250.00 per hour rate,[59] as well as eight hours of work.[60] Indeed, the record itself supports eight hours of work. Because the Court has already incorporated the *Johnson* factors pertinent to this analysis in its calculation, it finds the *Lodestar* amount does not need to be altered. Therefore, the Court finds that $2,000 in attorney's fees is reasonable and awards the same to Plaintiff.

Plaintiff also requests conditional attorney's fees should this case be litigated any further.[61] After reviewing the record and the nature of this case, the Court awards *conditional* attorney's fees as follows:

- $10,000 in the event Defendant files a motion to vacate, Rule 60 motion, motion for new trial, motion for reconsideration or other post-judgment, pre-appeal motion that does not result in a reversal of the Judgment obtained in this action;

- $15,000 in the event Defendant files an appeal to the Fifth Circuit Court of Appeals that does not result in a reversal of the Judgment obtained in this action;

- $5,000 in the event Defendant files a motion for rehearing or reconsideration in the Fifth Circuit Court of Appeals that does not result in a reversal of the Judgment obtained in this action;

- $5,000 for making and/or responding to a petition for writ of certiorari to the United States Supreme Court that does not result in a reversal of the Judgment obtained in this action;

- $10,000 for an appeal to the United States Supreme Court in the event a writ of certiorari is granted and does not result in a reversal of the Judgment obtained in this action; and

- $2,500 for collection of the judgment rendered in this case, should Plaintiff obtain a writ of execution, writ of garnishment, writ of attachment or other process.

Lastly, the Court awards court costs to Plaintiff pursuant to § 605(e)(3)(B)(iii).

---

[59] Dkt. No. 31-1 pp. 33–38.
[60] *Id.* ¶ 9.
[61] *Id.* pp. 38–39.

## IV. HOLDING

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment. Judgment is hereby entered in the amount of $3,200.00 (as statutory damages), $2,000.00 in attorney's fees, conditional attorney's fees as listed above, and costs pursuant to § 605(e)(3)(B)(iii). Post-judgment interest shall accrue at a rate of 2.18%.[62] A separate final judgment will issue.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 27th day of April, 2018.

                                                    Micaela Alvarez
                                                    United States District Judge

---

[62] *See* 28 U.S.C. § 1961(a) (2000) (Post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."); *Post-Judgment Interest Rates*, U.S. DISTRICT & BANKRUPTCY COURTS, SOUTHERN DISTRICT OF TEXAS, http://www.txs.uscourts.gov/interest/.